# Richmond.

## FLIPPO v. LAMB, TRUSTEE.

### MARCH 10, 1904.

Absent, Cardwell, J.

1. PARTIES—*Trustee in Bankruptcy—Case in Judgment.*—The evidence in this cause sufficiently shows that the contract sought to be enforced was entered into between the bankrupt and the appellant before the bankruptcy of the former, and hence this suit is properly brought by the trustee in bankruptcy.

2. TRUSTS AND TRUSTEES—*Interest in Land—Title in Another—Agreement to Divide Profits.*—When a conveyance of land is made to one person who advances all the purchase money therefor, but who has agreed in writing to pay to another, who negotiated the purchase, one-half of the net profits arising from the transaction, an express trust is created in favor of the latter, which will be enforced in a court of equity, although he paid no part of the purchase money. Such is the situation in the case in judgment, and no question of implied or resulting trust is involved.

3. AGREEMENT TO ADVANCE MONEY—*Expenses.*—Where two persons have agreed to share the profits arising from the purchase of a tract of land, and one of them agrees to advance all of the purchase money, he cannot afterwards, in the absence of any contract to that effect, charge the other with the expenses incurred by him in negotiating a loan to enable him to raise such purchase money.

Appeal from a decree pronounced by the Circuit Court of Hanover county, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*George P. Haw,* for the appellant.

*Leake & Carter* and *Smith, Moncure & Gordon,* for the appellee.

KEITH, P., delivered the opinion of the court.

On the 28th of November, 1899, John T. Terrell was, upon his own petition, adjudicated a bankrupt in the District Court of the United States for the Eastern District of Virginia, and shortly thereafter John A. Lamb was appointed his trustee. On the 23d of October, 1900, the District Court entered an order directing the trustee to institute such suit at law or in equity as to him might seem proper to enforce a contract alleged to have been entered into between the bankrupt, Terrell, and one Flippo for the purchase of a tract of land, for the collection of any money, or the enforcement of any right which may have accrued to Terrell by virtue of said contract. The trustee filed his bill in the Circuit Court of Hanover county, and with the bill makes the following contract an exhibit:

"Know all men by these presents, that whereas J. T. Terrell has bought a farm in Caroline county, Va., known as Brooke's farm, containing 700 acres, more or less, for five thousand dollars cash, for which E. J. Flippo agrees to pay for and take the deed in said Flippo's name and charge the said Terrell with twenty-five hundred dollars, being one-half of the purchase money for said farm; whereas the said Terrell is at work for the said Flippo by the month, it is agreed that said Flippo shall deduct the interest on the twenty-five hundred dollars every month out of said Terrell's wages, or on what part thereof that may be unpaid, the said Terrell shall have a right to pay as much of the principal as he can at any time; and whereas the

said farm contains a large quantity of timber, whenever the
timber is manufactured or disposed of one-half of the proceeds,
after paying expenses of manufacturing, shall belong to the said
Terrell, and sufficient amount of it shall be paid to said Flippo
to satisfy whatever part of the twenty-five hundred that is
unpaid. In case of any accident by death or otherwise that the
said Terrell could not pay all of the twenty-five hundred, him or
his heirs shall have a clear deed to such proportional part of
said farm and improvements thereon that said Terrell has paid
for.

"Given under our hands and seals this year of our Lord,
1899.

"E. J. FLIPPO. (Seal.)"

The subject of this contract is a tract of land in the county
of Caroline, valuable chiefly for its timber, which was owned
by the children of R. T. Brooke. Terrell called the attention of
Flippo, who was in the lumber business, to this land, and
suggested its purchase, but Flippo was of the opinion that it
could not be bought for a reasonable figure. Terrell went to
see Brooke upon the subject, and entered into negotiations which
resulted in its purchase for the sum of $5,000 in cash, as appears
by a letter from Brooke to Terrell, and the endorsement thereon,
as follows:

"11th October, 1899.

"Mr. J. T. Terrell,
    "Peake's P. O., Hanover Co.

"My Dear Sir:

"I have communicated with my children, and they consent to
my selling the place for $5,000.00 (five thousand dollars) cash.

I have been paying taxes on 700 acres, and I will sell it as containing 700 acres, more or less.

"Yours respectfully,

"R. T. BROOKE,<br>"P. O. Box 102, Richmond, Va."

"This will be a sale as soon as terms complied with.

"R. T. BROOKE."

"14th October, 1899."

Terrell was unable to pay any part of the purchase money, and thereupon the contract above set forth was entered into. There was evidence which tends to show that Flippo was ready to ignore the rights of Terrell, and to deal directly with Brooke for the purchase of this land, but Brooke, having agreed to sell to Terrell, refused to deal with Flippo.

In pursuance of the terms of this contract, Flippo, on the 23d of November, 1899, paid $2,000.00 to R. T. Brooke, by check, and on the 12th of December he borrowed the sum of $3,000.00, and paid the residue of the purchase money.

On November 15, 1899, a deed was made to E. J. Flippo, which was acknowledged November 18, 1899, and was recorded on the 27th of December of the same year. On December 11, 1899, a deed of trust was given to secure the loan, with which Flippo had paid the balance of the purchase money to Brooke, and this deed of trust was also recorded on the 27th of December.

A short time afterwards—on April 16, 1900—Flippo sold the timber upon this land for $7,000.00 in cash, and it is to ascertain the interest of John T. Terrell in this sum and in the land, after the timber had been cut from it, that this suit was instituted.

Flippo, in his answer, states that Terrell was in his employ-

ment at a salary of $50.00 per month for the services of himself
and his team; that he, the respondent, was endeavoring to pur-
chase the Brooke's farm when, to his surprise, Terrell showed him
a letter from Brooke offering the farm for $5,000 cash, and then
the agreement was entered into between Terrell and the re-
spondent, that they would buy it together, each furnishing one-
half of the money; that this agreement, which was not in writ-
ing, continued until after the deed was ready for delivery some
time in December, 1899, when Terrell being unable to furnish
his part of the money, the respondent borrowed $3,000, and
with $2,000 he had in hand paid for the land, and, with Ter-
rell's approbation, took a deed in his own name, and then signed
the written agreement, which has been heretofore referred to;
that after this was done Terrell continued to work with re-
spondent until the 31st of March, 1900, and during that time
drew his wages and the hire of his team; that after this state
of affairs had continued for some time, respondent told him
that he had not complied with his agreement and that he could
no longer submit to it, that he would sell the timber on the
place, if he could, and give Terrell one-half of the land, to
which Terrell consented, and agreed that respondent could have
for his trouble what he could get over and above what was
necessary to pay what the farm had cost, and in reliance upon
this made the sale of the timber, and was then much surprised
when Terrell made a demand upon him for one-half of the
money.

Depositions having been taken, the Circuit Court was of
opinion that the written contract, signed by Flippo and dated
1899, was executed at a period subsequent to the date of Ter-
rell's being adjudicated a bankrupt, and that, therefore, the
interest of Terrell under this contract did not pass by the
decree of the bankrupt court to the plaintiff in this cause, but
as Terrell, in his answer, conceded the right of plaintiff to re-
cover, there was nothing to prevent his surrendering whatever

interest he had under the contract and devoting it to the benefit of his creditors, and upon this theory entered a decree in favor of the trustee in bankruptcy, from which Flippo has appealed to this court.

After a careful consideration of the evidence, we have reached the conclusion that Flippo's contract with Terrell was made before the adjudication in bankruptcy, and, as a consequence, the trustee in bankruptcy has a right to sue for and recover whatever interest Terrell had in that contract. We think this conclusion is warranted by the evidence, extrinsic and intrinsic, by the testimony of Terrell, his wife and his daughter, incidentally corroborated by Brooke, by Gant, and indeed by Flippo himself; by the letter of Brooke, which shows that the terms of the contract of purchase had been reached and agreed upon as early as October 14, 1899; by the deed of bargain and sale from Brooke to Flippo, which bears date November 15, 1899, and is acknowledged November 18, 1899; and by internal evidence to be gathered from the contract itself, which under the hand and seal of Flippo shows that at the time of its execution Terrell had bought a farm in Caroline county for $5,000 cash, for which Flippo agreed to pay, to take the deed in his name and to charge Terrell with one-half of the purchase money. There is a strong probability that this contract was entered into before the execution of the deed of bargain and sale, and, in our judgment, that probability is sustained by a decided preponderance of the testimony.

This conclusion is decisive of the controversy. The case presents no question of implied or resulting trusts. It is a plain and express trust. Terrell, having made the bargain with Brooke for the purchase of this land, and being unable to pay any portion of the purchase money, informed Flippo of the fact. Flippo appears to be an active and energetic man of business, engaged in the purchase, sale, and manufacture of lumber. Seeing a profit in the bargain, he signed the contract,

recognizing Terrell as the purchaser, and in consideration, obviously, of being enabled to share in a profitable venture accepted the result of Terrell's negotiation for the purchase of this land from Brooke as Terrell's input, and on his own part expressly agreed to furnish the entire purchase money. When that contract was signed, the right of Terrell to share in whatever profits accrued was established.

We have no difficulty, therefore, in affirming the decree of the Circuit Court to this extent.

The appellee claims that there is error in the decree prejudicial to him, which under the rule of the court it becomes our duty to consider.

The land having been purchased for $5,000 and the timber upon it having been sold for $7,000 in cash, the trustee in bankruptcy would be entitled to one-half of the profits, while the decree appealed from only gave him $700. This result was arrived at by charging Terrell with what it cost Flippo to negotiate the loan of $3,000, with which the balance of the purchase money for the land was paid. Flippo was bound by the terms of his contract to pay the entire purchase money. It was not a matter of grace on his part but of obligation, his contract bound him to it; and it was error to impose upon Terrell or his trustee the cost incurred by Flippo in discharging the obligation of his contract.

It appears from the bill and from a bill of sale dated the 15th of September, 1899, that Terrell transferred certain property, valued at $1,000, to E. J. Flippo, for which Flippo has never accounted, and it is claimed that this sum should go as a credit upon the share of the purchase money due by Terrell, and as a result increase the amount to be recovered by the trustee in bankruptcy.

With respect to this contention we express no opinion, but will reverse the decree of the Circuit Court in favor of the appellee, with respect to the item of $300, enter a decree in favor of the

appellee to that effect, and remand the case to the Circuit Court for further inquiry as to appellant's liability for the property named in the bill of sale dated September 15, 1899, and which appears in the record as "Exhibit J. T. T. No. 4" with the deposition of J. T. Terrell.

*Reversed.*